[No. 576-2.    Division Two.    April 12, 1972.]

In the Matter of the Guardianship of GLORIA LEE HARP
et al.
CARL HANSEN, *Petitioner, v.* EDNA JONES, *Respondent.*

*Paule J. Braune,* for petitioner.

*Robert M. Reynolds,* for respondent.

ARMSTRONG, J.—The petitioner, Carl Hansen, sought a guardianship of his two illegitimate children. The trial court refused to take testimony and held that the petition, even if true, would not justify appointment of the father as guardian. Petitioner appeals from a denial of his petition.

The primary question raised in this appeal is whether the putative father is entitled to be appointed guardian of the persons of his illegitimate children while they remain living in the care, custody and control of their mother. We agree with the trial court that the putative father does not have this right.

The petition alleged facts, which if true, would raise a serious question of the fitness of the mother to have custody of the children. The paternity of the father had been established in a filiation proceeding.

In the trial court, petitioner contended that the mother of the children was incapable of fulfilling her responsibilities as the children's natural guardian due to an excessive drinking problem and overall unhealthy home environment. He sought guardianship not for the purpose of gaining the children's custody or control of their estate, but rather for the purpose of gaining the authority to oversee and direct the mother's allocation of support money and overall care and welfare of the children. He also sought guardianship in hopes of accomplishing the following: (a) to change the surnames of the children to his own, (b) to gain rights of reasonable visitation, (c) to make the children beneficiaries of his social security and provide for them by way of inheritance, and (d) to adopt the children in the event of the abandonment by their mother.

The trial court concluded that the mother of an illegitimate child is the natural guardian and any rights of the father are secondary to those of the mother. In essence, the trial court reasoned that to grant a petition in guardianship while the children remain in the mother's custody, in her home, would result in an unjustified encumbering of the mother's natural rights and accordingly dismissed the petition for failure to state a claim upon which relief could be

granted. We agree that the putative father would not be entitled to be appointed guardian of his children under the circumstances of this case.

At the time of the trial of this case (as well as the time of argument of this appeal) the putative father of illegitimate children had very limited rights. The mother of the illegitimate child was deemed to be the natural guardian and legally entitled to its care and custody. The rights of the father to custody and control of the child, although superior to any other person, were inferior to the rights of the mother. *Wade v. State*, 39 Wn.2d 744, 238 P.2d 914 (1951). Our state filiation statute provides that if the mother is a suitable person she shall be awarded the custody and control of her illegitimate child. If she is not a suitable person, then the court may deliver the care and custody of the child to any reputable person, including the father. RCW 26.24.190.[1]

Upon the death of the mother of an illegitimate child, who has not been adopted, the putative father is entitled to custody and control of the child (1) if he is a fit person and (2) if the welfare of the child would be served. *In re Estate of Moore*, 68 Wn.2d 792, 415 P.2d 653 (1966). This right has been diluted by the express provisions of the adoption statutes, which provide that the putative father's consent to adoption of the children is not necessary. RCW 26.32.030; RCW 26.32.040.[2] No notice of the adoption hearing need be given the father of an illegitimate child. RCW 26.32.080(5).

On April 3, 1972 the United States Supreme Court substantially increased the rights of the putative father of

[1] RCW 26.24.190 provides: "If the mother be a suitable person she shall be awarded the custody and control of said child; if she be not a suitable person, the court may deliver the care and custody of said child to any reputable person, including the accused, charitable or state institution. Such order and judgment may further provide, in the discretion of the court, that the surname of the accused shall henceforth be the lawful surname of such child."

[2] RCW 26.32.030 provides: "Written consent to such adoption must be filed prior to a hearing on the petition, as follows:

" . . .

"(3) If the person to be adopted is illegitimate and a minor, then by

illegitimate children. In that case, upon the death of the mother of the illegitimate children, they were declared wards of the state and placed in guardianship of other persons. The putative father was denied a hearing to establish his fitness as a parent before the children were taken from him. He was not denied the right to petition for custody and guardianship at a future time.

The court held that the putative father's rights as a parent were protected by the due process clause of the Fourteenth Amendment. He was, therefore, entitled to a hearing to determine his fitness as a parent before his children were taken from him. The state cannot merely presume that unmarried fathers are unsuitable and neglectful parents. Parental fitness must be established on the basis of individual proof, whether or not the parenthood was sanctified by marriage. *Stanley v. Illinois*, 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972).

Obviously, the filiation and adoption statutes are now unconstitutional insofar as they fail to recognize the newly determined constitutional rights of the putative father. We shall not endeavor to unravel the complexities involved in giving notice to a putative father to permit him due process in a determination of fitness to retain the custody of his children, or the change in his rights in adoption proceedings. We commend that process to the legislature. In any event, those questions are beyond the issues of this case.

■ With the current state of the law in mind, we address ourselves to the propriety of appointing the putative father of the illegitimate children their guardian notwithstanding the fact that they would remain living with the mother under her care, custody and control. In determining the feasibility of granting the father's petition we take note of the requirement of RCW 11.88.030(8) that in a petition

his mother, if living, except as hereinafter provided; . . ."

RCW 26.32.040 provides: "No consent for the adoption of a minor shall be required as follows:

" . . .

"(5) From a father of an illegitimate child."

for appointment of a guardian, the petition is required to set forth the reason why the appointment of a guardian is sought, the interest of the petitioner in the appointment and whether the appointment is sought as guardian of the person, the estate or both. Implicit within this provision is the requirement that before a court will appoint a guardian it must be shown that such appointment is necessary and reasonable. 39 Am. Jur. 2d *Guardian and Ward* § 19 (1968).

■ In the instant case petitioner does not seek the children's custody nor could he be appointed guardian of their estate since no estate exists. Petitioner thus seeks guardianship of the person, not in the usual sense, but rather for the primary purpose of gaining the authority to oversee and control the mother's allocation of support money and overall care and welfare of the children. Such a purpose is clearly not consistent with the purposes for which guardianship is intended. To appoint petitioner guardian for the purpose of overseeing the mother's activities regarding her care and provision for the children would clearly stand in derogation of her custodial control of the children. Further, to create a dual control in these circumstances would not only constitute an unnecessary appointment of a guardian, but more significantly, subject the mother to continual interference by the putative father, thereby increasing the likelihood of friction within the home and adding to her burdens as a mother. The father of children born in wedlock would not be accorded these rights if the mother had been awarded custody of the children.

We conclude that the father of illegitimate children has no right to appointment as guardian of the persons of the children while they remain in the care, custody and control of their mother. Although the mother of illegitimate children is ordinarily the proper person to be appointed as guardian of the person and estate of the children, we can conceive of situations when the putative father would be the proper person to be appointed guardian. If the father had obtained custody and control of the children, either

through juvenile court or an equitable proceeding, he would be the proper person to be appointed guardian of the persons and estate of the children. If the mother of the children had custody and control of the children and the putative father had set up funds for the welfare of the children, beyond his duty of support, the father might very well be the proper person to be appointed guardian of the estate of the children. The recent decision of the United States Supreme Court in *Stanley v. Illinois, supra,* has created an uncharted sea in the determination of the rights of putative fathers to their illegitimate children.

The trial court pointed out that the father is not without a remedy if his real concern is the welfare of the children. His petition clearly establishes the need of an investigation by the juvenile court. Pursuant to RCW 13.04.060 he is entitled to petition the juvenile court to obtain the court's protective services if the children are determined to be dependent children. In the exercise of its discretion, if the juvenile court finds that the mother is not a suitable person to have the custody and control of the child, then the custody and control may be awarded to the father as sanctioned by RCW 26.24.190.

If the juvenile court finds the children to be dependent and awards custody of the children to the mother, in the discretion of the court, the father may acquire visitation rights. In determining whether the putative father should have visitation rights to his illegitimate children the best interests and welfare of the children are of paramount importance. *See Right of Putative Father to Visit Illegitimate Child,* Annot., 15 A.L.R.3d 887 (1967).

Since the allegations in the petition clearly authorize a juvenile court hearing to determine the dependency of the children, we have discussed the jurisdiction of the juvenile court to grant custody or visitation rights to the putative father if the children are found to be dependent. We are not considering the possibilities of obtaining visitation rights in any type of civil proceeding other than in juvenile

court or by way of guardianship. Other possible remedies are not before us today.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied May 10, 1972.

Review denied by Supreme Court June 21, 1972.